UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Brian Anthony Planter and Yvonne Hill-Planter,<br><br>Debtor(s). | Bankruptcy No. 08 B 16883<br>Chapter 13<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on an application for compensation filed by Matuszewich, Kelly & McKeever, LLP ("MKM"), as attorneys for the debtors, Brian Anthony Planter and Yvonne Hill-Planter ("Debtors"), and the response and objection filed by Glenn Stearns, as the Standing Chapter 13 Trustee ("Trustee"). MKM, in its January 28, 2009 "Application for Approval of Compensation," seeks $8,440 in fees, plus $333.60 in costs. Trustee asserts that the fees sought by MKM are inconsistent with the Federal Rule of Bankruptcy Procedure 2016(b) statement (the "Rule 2016(b) statement") filed by MKM. The Rule 2016(b) statement provides that MKM agreed to accept $2250 for its legal services in this case and that there is a balance due of $700. In its latest application for compensation, MKM attached an earlier "Agreement for Legal Services," dated June 24, 2008 and signed by both Debtors, which is not the model retention agreement and, instead, provides for a flat fee of $2250 for specific legal services and an hourly rate for, <u>inter alia</u>, "additional work." The Trustee contends that this case was not difficult or novel and that some of the work performed by MKM was excessive and unnecessary. The Trustee concludes that only $3365 should be allowed for pre- and post-confirmation legal services performed under MKM's "Agreement for Legal Services."

1

For the reasons set forth herein, the Court grants in part and denies in part MKM's application for compensation, thereby reducing the fees to $3519, plus $333.60 in costs.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (O).

## FACTS AND BACKGROUND

The material facts are not in dispute and the parties waived the opportunity for an evidentiary hearing. The Court takes judicial notice of all papers filed by the parties and the case docket. See Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (stating that in resolving a motion to dismiss, a court can take judicial notice of matters of public record); Frierdich v. Mottaz, 294 F.3d 864, 870 (7th Cir. 2002) (noting that the bankruptcy judge did not err by taking judicial notice of the schedules filed in the bankruptcy case); Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997) (stating that the court can take judicial notice of the contents of court records). These documents reveal the following undisputed facts.

Debtors Brian Anthony Planter and Yvonne Hill-Planter ("Debtors") and Debtors' attorneys, Matuszewich, Kelly & McKeever, LLP ("MKM"), established an "Agreement for Legal Services," dated June 24, 2008 and signed by both Debtors, which is not the model retention agreement and, instead, provides for a flat fee of $2250, plus a $274 filing fee, for specific legal services relating to filing a Chapter 13 petition and a hourly rate of $170-200 for other services, including, inter alia, "additional work." While adversary actions and motions to convert are specifically excluded from coverage in the flat fee, the usual and customary motions

to object to claims, to incur debt, to avoid liens as well as to respond to motions for relief from stay are not mentioned at all.

MKM, on behalf of Debtors, filed a Chapter 13 petition on June 30, 2008. On July 15 and 16, 2008, MKM filed a Chapter 13 Plan and Debtors' schedules, Chapter 13 statement of current monthly income ("CMI") and statement of financial affairs ("SOFA"). MKM also filed a Rule 2016(b) statement on July 16, 2008, which provides that MKM agreed to accept $2250 for its legal services in this case and that there is a balance due of $700.

MKM filed a modified Chapter 13 plan on August 22, 2008. Creditor Barclays Capital Real Estate d/b/a HomEq Servicing Corporation filed a motion for relief from stay as to Debtors' primary residence at 1181 Silver Lake Court, Pingree Grove, Illinois on September 4, 2008, and, in an order dated September 11, 2008, the Court granted creditor HomEq's motion for relief from stay.

MKM filed another modified Chapter 13 plan on October 31, 2008 that the Court confirmed in an order dated December 8, 2008 and a subsequent order dated December 15, 2008. Debtors proposed a 60 month plan with payments of $1547 per month for total payments to the Trustee of $92,820. Debtors proposed to pay 75% of general unsecured claims. In addition, Debtors' modified plan, under paragraph H, second (2)(d), provides for priority payments to debtors' attorney in the amount of $700, which matches the balance owed to MKM from the Rule 2016(b) statement.

On December 23, 2008, Debtors filed a motion to vacate the Court's September 11, 2008 order that granted relief from stay for creditor HomEq as to Debtors' primary residence. There were status hearings on January 22, 2009 and February 19, 2009 before the Court granted Debtors' motion to vacate in an order dated March 23, 2009. On the same date, Debtors and

3

creditor HomEq entered into an agreement order as to the first mortgage lien on Debtors' primary residence.

On January 28, 2009, MKM filed an "Application for Approval of Compensation," with an attached affidavit, itemization, and the initial "Agreement for Legal Services." In its latest application for compensation, MKM sought $8,440 in fees, plus $333.60 in costs, for services from June 24, 2008 to January 22, 2009 that totaled 43.2 billable hours.

On March 16, 2009, the Trustee filed a response to MKM's application for fees. The Trustee contends that this case was not difficult or novel and that some of the work performed by MKM was excessive and unnecessary. The Trustee concludes that only $3365 should be allowed for pre- and post-confirmation legal services performed under MKM's "Agreement for Legal Services."

MKM has not filed a reply to the Trustee's response.

## DISCUSSION

Section 329(b) of the Bankruptcy Code effectively allows the Court to determine whether the fees charged are excessive and, if so, the Court may cancel any compensation agreement between the attorney and the client, or it may order the return of the excessive portion of the fees to the debtor's estate or to the entity that made the payment. See In re Wiredyne, Inc., 3 F.3d 1125, 1127 (7th Cir. 1993). Thus, bankruptcy courts have wide discretion to determine reasonable compensation for actual and necessary services. In re Wildman, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987).

To make this determination, courts are guided by 11 U.S.C. § 330 which sets forth a number of factors that Congress found relevant to an assessment of the value of the services. In re Wiredyne, Inc., supra, 3 F.3d at 1128. Section 330 of the Bankruptcy Code governs

compensation for services rendered for all professionals, including a debtor's attorney. 11 U.S.C. § 330. Pursuant to 11 U.S.C. § 330(a)(3), courts should consider six factors to determine whether or not to award attorney fees. Section 330 states, in relevant part:

> (a)(3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> [11 U.S.C. § 330(a)(3)(A)-(F).]

The plain language of § 330(a)(4)(B) allows compensation for services that benefit the debtor. In re Lee, 209 B.R. 708, 710 (Bankr. N.D. Ill. 1997). It also allows the court to consider the six factors in § 330(a)(3).

"Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." In re Geraci, 138 F.3d 314, 318 (7th Cir. 1998); see also In re Wildman, supra, 72 B.R. 700 at 708. The legislative history for § 329 states that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." In re Mortakis, No. 08 B 14401, slip op. at *6 (Bankr. N.D. Ill. April 29, 2009) (quoting H.R. REP. NO. 95-595, at 329 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6285) (emphasis supplied).

5

Section 329(a) requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Fee disclosure under § 329 and the Rules is mandatory, not permissive. In re Mortakis, supra, No. 08 B 14401, slip op. at *6 (citing In re Whaley, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002)). Failure to disclose is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid. See In re Prod. Assocs., Ltd., 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001).

Under the Federal Rules of Bankruptcy Procedure 2016, to establish actual and necessary services when an applicant files an application for compensation, an applicant shall submit a detailed statement of the services rendered, time expended and expenses incurred as well as the amounts requested. In re Wildman, supra, 72 B.R. at 707 (citing Fed. R. Bankr. P. 2016). The detailed statement establishes the "actual" requirement, while an accompanying narrative explanation of the "how" and "why" establishes the "necessary" requirement. Ibid.

In addition, Local Bankruptcy Rule 5082-2 and General Order 07-02 identify the requirements for the contents of an application for compensation made by a professional, including a debtor's attorney, under a Chapter 13 case. Bankr. N.D. Ill. R. 5082-2; Bankr. N.D. Ill. Gen. Order 07-02. If a debtor's counsel and debtor enter into a Model Retention Agreement, then counsel may apply for a flat fee not to exceed $3500. Bankr. N.D. Ill. R. 5082-2. If the debtor's counsel and debtor have not entered into a Model Retention Agreement, then counsel must include a completed form itemization with the fee application. Ibid.

As an initial matter, pursuant to the "Agreement for Legal Services," Debtors hold a contractual right to have Chapter 13 bankruptcy services performed by MKM, and such clients' best interests in the bankruptcy case would be to demand that the services to which they are contractually entitled be performed according to those terms, absent a new agreement. See

6

generally In re Griffin, 313 B.R. 757, 767 (Bankr. N.D. Ill. 2004). The $2250 flat fee for Chapter 13 pre-confirmation services in the "Agreement for Legal Services" appears reasonable on its face, but, typically, under the Model Retention Agreement, a flat fee of $3500 covers services through closing, rather than just through confirmation. Bankr. N.D. Ill. R. 5082-2; Bankr. N.D. Ill. Gen. Order 07-02. Since this is not a model retention agreement, the Court must review the itemized post-confirmation work and "additional work" services for reasonableness in light of the initial $2250 flat fee.

The Court finds troubling the fact that the "Agreement for Legal Services" and the related Rule 2016(b) statement, while purporting to establish a flat fee through confirmation, really establishes a floor of $2250 (not a ceiling) and adds potential costly extras based on an hourly and/or set fee for specific services, many of which are routinely encountered in most Chapter 13 cases. See In re Mortakis, supra, No. 08 B 14401, slip op. at *8. For instance, the usual and customary motions to object to claims, to incur debt, to avoid liens as well as to respond to motions for relief from stay are not mentioned at all, and, would presumably constitute "additional work" at $170-200 per hour, pursuant to the terms of the contract.

MKM billed "additional work" hourly services in minimum time increments of 0.20 hours, yet courts in this district have routinely held such a practice to be inherently inflationary on the resulting bill. In re Kowalski, 402 B.R. 843, 847 (Bankr. N.D. Ill. 2009) (citing In re Stoecker, 114 B.R. 965, 976 (Bankr. N.D. Ill. 1990); In re Pettibone Corp., 74 B.R. 293, 302 (Bankr. N.D. Ill. 1987)). The Court finds that the appropriate minimum billing increment of 0.10 hours is appropriate. Ibid. The Court confirmed Debtors' modified plan in an order dated December 8, 2008. Post-confirmation services from December 8, 2008 to January 22, 2009, including the December 9-10, 2009 services on the motion to vacate relief from stay, equated to "additional work," pursuant to the "Agreement for Legal Services." These time entries equaled

7

2.3 billable hours or $460 for post-confirmation services, excluding the motion to vacate, and 4.75 billable hours or $950 on the December 9-10, 2009 services for the motion to vacate the relief from stay. Accordingly, a 10% reduction from $1410 to $1269 is appropriate. See ibid.

MKM billed travel time at the same rate as court time, including August 6, 2008 (3.3 hours; $660), August 28, 2008 (1.7 hours; $340), and September 11, 2008 (2.8 hours; $560), yet this Court has routinely held that time spent traveling to and from a location typically shall be compensated at one-half of the attorneys' or other professionals' hourly rate. See In re McKeeman, 236 B.R. 667 (B.A.P. 8th Cir. 1999); In re Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996). Ordinarily, the Court would reduce these charges in half to equal $780 based on 3.9 hours, rather than the initially charged amount of $1560 for 7.8 hours. In this case, however, the "Agreement for Legal Services" provides a flat fee for these pre-confirmation services, and, thus, the Court will not make a reduction for travel time.

Courts have also reduced compensation when there was excessive time charged for attending court or § 341 hearings, interoffice conferencing, duplicative time, or "lumped" entries. See In re Mortakis, supra, No. 08 B 14401, slip op. at *11. Along with a series of lumped entries, MKM listed the following excessive charges for interoffice conferencing, including: August 6, 2008 (conference with JPK; 0.20 hours; $40); August 8, 2008 (review of JPK memo; 0.30 hours; $60); August 19, 2008 (conference with JPK; 0.20 hours; $40); September 11, 2008 (conference with JPK; 0.30 hours; "description" states no charge, but "amount" lists $60); October 8, 2008 (conference with MMB; 0.50 hours; $100); and November 24, 2008 (conference with JPK; 0.30 hours; $60). Again, the "Agreement for Legal Services" provides a flat fee for these pre-confirmation services, and, thus, the Court will not make a reduction for attending court or § 341 hearings, interoffice conferencing, duplicative time, or "lumped" entries. Moreover, the Court will not reduce the duplicative time and "lumped" entries in the post-

8

confirmation services on December 9-10, 2008 relating to the motion to vacate since it has previously reduced these entries by 10%.

Accordingly, the Court shall adjust MKM's application in the following manner: reduce post-confirmation services, including the motion to vacate, by 10% from $1410 to $1269; and find that the $2250 flat fee for Chapter 13 pre-confirmation services in the "Agreement for Legal Services" is reasonable in light of the circumstances. Thus, the Court ultimately reduces MKM's fees to $3519.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part MKM's application for compensation, thereby reducing the fees to $3519, plus $333.60 in costs.

THEREFORE, IT IS ORDERED that the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: May 14, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge